# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARLA NAVEDO, special representative of the estate of ANNA MARIE MURILLO, Plaintiff | : : : : : | No. 1:12-cv-00888 (Judge Kane) |
| v. | : : | |
| PRIMECARE MEDICAL, INC., et al., Defendants | : : | |

## MEMORANDUM

Before the Court is Defendants PrimeCare Medical, Inc. (PrimeCare)[1], Bradley Jones, and George Mosonyi's motion for summary judgment. (Doc. No. 36.) The motion is fully briefed and ripe for disposition. For the reasons that follow, the Court will grant the motion in part, and deny it in part.

## I. BACKGROUND

On December 31, 2009, Decedent Anna Marie Murillo requested mental health treatment and disclosed a current prescription for Elavil at a medical screening upon her incarceration at York County Prison.[2] (Doc. No. 38 ¶¶ 2-3.) She indicated a history of depression and an allergy to bee stings, but no additional allergies, and was placed in mental health segregation. (Id. ¶¶ 5-7.) On January 5, 2010, Nurse Aimee Leipart assessed her mental state and Dr. Pamela Rollings-Mazza issued a verbal order to continue her Elavil prescription. (Id.) On January 28, 2010, Decedent told Leipart that the Elavil was not helping, and requested

---

[1] PrimeCare is a Pennsylvania corporation with a contract to provide medical care and services to inmates at York County Prison.

[2] The following facts of record are undisputed, unless otherwise noted.

1

Lithium. (Id. ¶ 8.) Shortly thereafter, Dr. Rollings-Mazza gave a verbal order for Decedent to receive her Lithium, and increased her dosage eight days after prescribing it. (Id. ¶ 10-11.) On February 22, 2010, Decedent stated that she was having headaches and requested an increase in the Elavil dosage, which Dr. Rollings-Mazza ordered. (Id. ¶ 12-13.) During the period of March 3, 2010 to April 19, 2010, Dr. Rollings-Mazza decreased Decedent's Lithium dosage due to concerns over her headaches and thyroid functioning. (Id. ¶ 14.) On April 19, 2010, Decedent requested medication for her depression and anxiety, and Dr. Rollings-Mazza prescribed Lamictal.[3] (Id. ¶¶ 17-18.) A week later, Decedent reported that the Lamictal was keeping her awake at night and she wanted to take the medication in the mornings instead. (Id. ¶ 19.) Leipart and Rollings-Mazza agreed, and further increased the Lamictal dosage from one to two tablets. (Id.)

On May 12, 2010, Nurse Rohrbaugh evaluated Decedent for irritated eyes and facial swelling, and Decedent was prescribed Benadryl, eye drops and Tylenol. (Id. ¶¶ 20-21.) Decedent received her last dose of Lamictal at 7:21 am. The next day, May 13, 2010, Decedent refused her 7:20 am dosage of Lamictal. (Id. ¶ 22-23.) At 10:34 am on the same day, Physician Assistant Toby Catone examined Decedent, and determined she was likely having an allergic reaction to a medication. (Id. ¶ 25.) Decedent was evaluated again at 1:56 pm, at which point Catone noted her symptoms had increased in severity. (Id. ¶ 26.) Decedent was then sent to York Hospital in an ambulance. (Id. ¶ 27.) She told the EMS providers that she woke up with

---

[3] According to the expert report of Dr. Sullivan, the systemic allergic reaction known as Stevens-Johnson Syndrome (SJS), which Decedent allegedly suffered, has been reported as a possible reaction to Lamictal in rare cases. He posits that the percentage of individuals who take Lamictal and suffer SJS is between .3% and 1%.

2

an allergic reaction, and that she had been cleaning out a vent the day before. (Id. ¶¶ 29, 31.) The attending physician at the emergency room expressly indicated in his physician's note that he did not believe her reaction was Stevens-Johnson Syndrome (SJS); instead, he diagnosed her symptoms as cellulitis, and recommended that Decedent undergo a follow-up check-up in one to two days and and return if her symptoms worsened. (Id. ¶¶ 35-36.) Decedent was discharged later that same day. (Id. ¶ 39.)

The next day, May 14, 2010, Defendant Nurse Practitioner George Mosonyi examined Decedent and noted that her eyes and face remained swollen and her heart rate was elevated. (Id. ¶ 41.) Decedent was placed in medical observation, meaning that her vitals would be monitored by a nurse. (Id. ¶ 45.) This was the standard procedure. (Id.) Defendant Mosonyi made a note to continue Decedent on the following medications: Prednisone, Keflex, Bartcim, Benadryl and Zantac. (Id. ¶ 46.) Later that day, at 1:39 pm, Decedent called down to the medical department crying and said she felt her eyes and tongue were swollen. (Id. ¶ 48.) When Decedent arrived at the medical department, however, she indicated her eyes and lips were less swollen than the day before. (Id.) Nurse Skaggs noted the swelling and applied a cold compress to Decedent. (Id. ¶ 49.) That evening, Decedent complained to Defendant Nurse Bradley Jones that her body was covered in a rash and her eyes hurt, but denied having shortness of breath and had no problems eating. (Id. ¶ 50.)

The next morning, May 15, 2010, Decedent's rash had spread over her entire body, with swollen and chapped lips, a swollen tongue, and an elevated temperature of 102.6 degrees. (Id. ¶ 51.) At this time, Defendant Mosonyi ordered that Decedent be hospitalized. (Id. ¶ 54.) Decedent was then admitted into York Hospital for Stevens-Johnson Syndrome, a systemic

allergic reaction linked with Lamictal. (Id. ¶ 57.) Decedent was discharged on her own recognizance on May 29, 2010, and did not return to York County Prison. (Id. ¶ 59.) On September 2, 2011, Decedent committed suicide. (Id. ¶ 61.)

On May 11, 2012, Plaintiff Carla Navedo, acting as a special representative of Decedent's estate, initiated this action against Defendants PrimeCare Medical, Inc., Bradley Jones, George Mosonyi, and Colleen Heather Rumsey.[4] (Doc. No. 1.) Plaintiff alleges that because of Defendants' culpable conduct, Decedent developed SJS and became severely depressed, leading to her eventual suicide. (Doc. No. 40 ¶ 61.) Plaintiff sets out both a Section 1983 claim for deliberate indifference against Defendants PrimeCare, Mosonyi and Jones, as well as related state law claims for medical negligence, wrongful death, and a survival action. (Doc. No. 1.) On June 28, 2013, Defendants PrimeCare, Mosonyi and Jones filed a motion for summary judgment. (Doc. No. 3.) The motion has been fully briefed and is now ripe for disposition.

## II.  LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is material if it might affect the outcome of the suit under the applicable law, and it is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49

---

[4] Additional defendants were named in the original complaint, but they have since been dismissed by stipulation of the parties.

(1986). At summary judgment, the inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law. Id. at 251-52. In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Grp. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is warranted. Celotex, 477 U.S. at 322. With respect to the sufficiency of the evidence that the non-moving party must provide, a court should grant summary judgment when the non-movant's evidence is merely colorable, conclusory, or speculative. Anderson, 477 U.S. at 249-50. There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Further, a party may not defeat a motion for summary judgment with evidence that would not be admissible at trial. Pamintuan v. Nanticoke Mem'l Hosp., 192 F.3d 378, 387 (3d Cir. 1999).

## III.  DISCUSSION

Defendants PrimeCare, Mosonyi and Jones move for summary judgment on Counts One and Two of Plaintiff's complaint.  Count One alleges that Defendants were deliberately indifferent to Decedent's serious medical need in violation of the Eighth Amendment to the United States Constitution.  Count Two alleges that Defendant's conduct amounts to medical negligence under Pennsylvania law.  The Court will address each count in turn.

### A.  Count One: Deliberate Indifference

Count One of Plaintiff's complaint alleges that Defendants PrimeCare, Mosonyi and Jones were deliberately indifferent to Decedent's serious medical needs.  (Doc. No. 1 at 16-17.) Plaintiff concedes she has not met the requirements to establish a Monell claim against Defendant PrimeCare under Section 1983.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).  Under Monell, a local government entity is only liable in a Section 1983 action when the plaintiff shows that the entity's official policy is the "moving force" behind the constitutional violation.  Id. at 694.  The Court agrees that no evidence has been adduced showing PrimeCare's policy or custom was the moving force behind Decedent's injury.  As such, the Court will grant summary judgment to Defendant PrimeCare on Count One.  The Court proceeds to analyze whether Defendants Mosonyi and Jones are likewise entitled to summary judgment on Count One.

Plaintiff alleges Defendants Mosonyi and Jones were deliberately indifferent to Decedent's serious medical need after she returned to York County Prison on May 13, 2010, because they failed to provide adequate treatment and promptly send Decedent back to the hospital, despite instructions from York Hospital that Decedent should be returned if her

6

symptoms worsened. (Doc. No. 41-1 at 3-6.) Defendants contend that Plaintiff has not submitted evidence creating a jury question on Defendants' alleged deliberate indifference.

When prison officials and private contractors acting under the color of state law are deliberately indifferent to an inmate's serious medical needs, they violate the Eighth Amendment's prohibition on cruel and unusual punishment. Miller v. Beard, 699 F. Supp. 2d 697, 707 (E.D. Pa. 2010). A plaintiff must demonstrate that a defendant's acts or omissions constituted "an unnecessary and wanton infliction of pain" which is "repugnant to the conscience of mankind" and "offends evolving standards of decency." Id. (citing Estelle v. Gamble, 429 U.S. 97, 105-06 (1976)). This means that a plaintiff must show that (1) he had a serious medical need, and (2) the defendant was aware of this need and was deliberately indifferent to it. Id.

Deliberate indifference is more than negligence. See Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) ("It is well-settled that claims of negligence and medical malpractice, without some more culpable state of mind, do not constitute deliberate indifference."). Deliberate indifference requires a highly culpable state of mind on the part of the defendant, and an inadvertent failure to provide adequate medical care does not suffice. See Farmer v. Brennan, 511 U.S. 825, 837 (1994) ("Failure to alleviate a significant risk that an official should have known about is not deliberate indifference."). Deliberate indifference may be found when a defendant: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment. Rouse, 182 F.3d at 192.

Defendants Mosonyi and Jones concede that Decedent had a serious medical need (Doc. No. 37 at 15), so the question before the Court is whether Plaintiff has adduced evidence raising

7

a question for the jury as to whether Defendants were deliberately indifferent to that need. In light of the evidence regarding Decedent's medical care, the Court finds that there is sufficient evidence from which a jury could conclude that Defendants Mosonyi and Jones exhibited deliberate indifference to Decedent's serious medical need.

When Decedent returned to York County Prison on May 13th, 2010, instructions provided by York Hospital indicated that Decedent should be returned to the hospital if her symptoms worsened. (Doc. No. 41-4.) Defendant Mosonyi saw Decedent at 9:48 am on May 14th, 2010, when he observed that her face was still swollen and that she had an elevated heart rate. (Doc. No. 38-7 at 10.) He did not order her back to York Hospital, but instead placed Decedent in medical observation, where her vitals would be monitored by the nursing staff. (Doc. No. 38-13 at 7.) When Defendant Jones checked in with Decedent that night, Jones noted that although Decedent had a rash, she was not having shortness of breath or difficulty breathing, and he recorded her temperature at 100.3 degrees. (Id.) Jones called the PrimeCare health provider about Decedent, and Jones was told to apply a cold compress, which he did, but provided no additional treatment and did not return her to York Hospital. (Doc. No. 41-2 at 10-13.) When Decedent's symptoms intensified on the morning of May 15th, 2010, Mosonyi finally ordered that she return to York Hospital. (Id. ¶ 54.) This delay, according to Plaintiff's expert report, decreased Decedent's chances of recovering from SJS. (Doc. No. 38-14 at 9.)

Thus, the Court finds that a reasonable fact finder could conclude that, in light of instructions from the hospital and Decedent's continuing pain and symptoms, Defendants were aware of the risk of serious harm to Decedent, their failure to return her to the hospital prevented her from receiving needed or recommended medical treatment, and they therefore exhibited

8

deliberate indifference to her serious medical need. See Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575 (3d Cir. 2003) (noting that courts have "found deliberate indifference in situations where there was objective evidence that a plaintiff had serious need for medical care, and prison officials ignored that evidence") (internal quotations omitted); Petrichko v. Kurtz, 117 F. Supp. 2d 467, 471-72 (E.D. Pa. 2000) (denying summary judgment on Section 1983 deliberate indifference claim where a reasonable jury could conclude that delay in receiving necessary treatment exacerbated plaintiff's medical condition).

Defendants characterize Plaintiff's allegations as mere disagreement over the care provided by Defendants or, at most, simply a mistake by Defendants in failing to return Decedent to the hospital. (Doc. No. 37 at 16.) The Court agrees that mere mistakes do not qualify as deliberate indifference. See Rouse, 182 F.3d at 197. At this point, however, Plaintiff need only submit evidence sufficient to create a genuine dispute of material fact in order to survive Defendant's motion for summary judgment. Fed. R. Civ. Pro. 56(a); NAACP v. N. Hudson Reg'l Fire & Rescue, 665 F.3d 464, 475 (3d Cir. 2012). Here, the Court finds that the record supports both parties' characterizations of the evidence. Therefore, the Court will deny summary judgment to Defendants Mosonyi and Jones on Count One of Plaintiff's complaint.

### B. Count Two: Medical Negligence

Count Two of Plaintiff's complaint is a claim under Pennsylvania law for medical negligence. (Doc. No. 1.) Defendants PrimeCare, Mosonyi and Jones argue that they are entitled to summary judgment on Count Two because Plaintiff's expert report is silent on how Defendants fell below the applicable standard of care and causation. (Doc. No. 38 at 19-22.) The Court disagrees, and finds that Plaintiff's expert report establishes the requisite elements of

9

the claim, and will therefore deny Defendants' motion for summary judgment on Count Two.

In order to show a prima facie case of medical negligence under Pennsylvania law, the plaintiff must establish (1) a duty owed by the physician to the patient (2) a breach of duty from the physician to the patient (3) that the breach of duty was the proximate cause of, or a substantial factor in, bringing about the harm suffered by the patient, and (4) suffered damages directly resulting from that harm. Mitzelfelt v. Kamrin, 584 A.2d 888, 891 (Pa. 1990). It also requires an "expert witness who will testify, to a reasonable degree of medical certainty, that the acts of the physician deviated from good and acceptable medical standards, and that such deviation was the proximate cause of the harm suffered." Id. "No magic words are required to demonstrate causation; the reasonable degree of medical certainty essential for acceptance of an expert's opinion must be amenable to extrapolation from the expert's report." Grossman v. Barke, 868 A.2d 561, 572 (Pa. Super. Ct. 2005) (quoting Watkins v, Hospital of the Univ. Of Pa., 737 A.2d 263, 267 (Pa. Super. Ct. 1999).

Considering the expert report in a light most favorable to Plaintiff, the Court finds that it is adequate under Pennsylvania law to survive Defendants' motion for summary judgment. Although Dr. Sullivan's expert report does not go into great detail regarding the behavior of Defendants PrimeCare, Mosonyi and Jones on May 13-15, 2010, it satisfactorily sets forth that they fell below the standard of care and that this failure increased the risk of harm to Decedent. First, Dr. Sullivan's report states that Defendants should have been aware that Decedent required re-hospitalization upon the worsening of her symptoms, after Decedent was returned from the hospital on May 13, 2010, "yet made no effort to insure [sic] continual observation." (Doc. No. 38-14 at 3.) Moreover, he also concludes that Defendant Jones:

10

applied a cold compress to her eyes, but secured no treatment for SJS, despite her complaints of a "body rash," her worsening swelling, vision problems, including conjunctivitis and other obvious symptoms of the illness, all of which he should have known were conditions requiring rehospitalization.

(Id.)

The Court therefore concludes that the expert report of Dr. Sullivan sets forth that Defendants fell below the standard of care in failing to pay closer attention to Decedent's symptoms or to rehospitalize her in the face of her worsening symptoms. Therefore, the Court disagrees with Defendants' contention that "there is no expert opinion to support what steps should or could have been taken by PrimeCare staff on May 13th or 14th which fell below the standard of care." (Doc. No. 37 at 16.) Rather, Dr. Sullivan opines that Defendants could have, and should have, sent Decedent back to the hospital.

The Court further finds that the expert report adequately opines as to causation. Dr. Sullivan writes that treating SJS requires "aggressive, high intensity, multispecialty, supportive care in, at the least, a high powered Intensive Care Unit with frequent visits by ophtalmology" and that Defendants' failure to properly diagnose Decedent was "highly likely to result in long term serious damage."[5] (Doc. No. 38-14 at 9.)

Plaintiff is correct in pointing out that Pennsylvania recognizes "loss of chance" in medical malpractice cases, and that Dr. Sullivan's expert report appears to express the belief that Defendants' failure to return Decedent to York Hospital significantly increased the likelihood

---

[5] "In my opinion, the negligence of the York and Primecare physicians, together with the failure of Primecare staff to provide any meaningful treatment to Ms. Murillo on May 13 and 14 dramatically increased the risk that she would suffer the severe SJS that ultimately affected her, and diminished the chance she would have had to make a full, or more complete recovery." (Doc. No. 38-14 at 9.)

11

that her disease would worsen. This is sufficient to raise a question for the jury. See <u>Corrigan v. Methodist Hosp.</u>, 234 F. Supp. 2d 494, 501 (E.D. Pa. 2002) (quoting <u>Hamil v. Bashline</u>, 392 A.2d 1280, 1286 (Pa. 1978)) ("Once a plaintiff has introduced evidence that a defendant's negligent act or omission increased the risk of harm to a person in plaintiff's position, and that the harm was in fact sustained, it becomes a question for the jury as to whether or not that increased risk was a substantial factor in producing the harm.")

Because the Court finds Plaintiff has made out a <u>prima facie</u> case of medical negligence under Pennsylvania law, the Court will therefore deny summary judgment to Defendants on Count Two of Plaintiff's complaint.

## IV. CONCLUSION

For the reasons set forth above, the Court will grant Defendants' motion for summary judgment in part, and deny it in part. An order consistent with this memorandum follows.