**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CARLA NAVEDO, special** | : | |
| **representative of the estate of** | : | **No. 1:12-cv-00888** |
| **ANNA MARIE MURILLO,** | : | |
| **Plaintiff** | : | **(Judge Kane)** |
| | : | |
| **v.** | : | |
| | : | |
| **PRIMECARE MEDICAL, INC., et al.,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

Before the Court is Defendant Colleen Heather Rumsey, M.D.'s motion in limine to preclude certain evidence from being presented at trial.  (Doc. No. 49.)  The motion is fully briefed and ripe for disposition.  For the reasons that follow, the Court will grant the motion in part, and deny it in part.

**I.      BACKGROUND**

On April 19, 2010, Decedent Anna Marie Murillo, then incarcerated at the York County Prison, requested medication to help with her depression and anxiety, and was prescribed Lamictal.  (Doc. No. 51 at 1.)  On May 12, 2010, Decedent complained of irritated eyes and facial swelling, and refused her daily dose of Lamictal.  (Id. at 2.)  The next day, Decedent was transferred to York Hospital for examination when the severity of her symptoms increased.  (Id.)

Upon her arrival at York Hospital, Decedent was examined by Defendant Rumsey, who concluded that Decedent was most likely experiencing a general allergic reaction, cellulitis, ordered a corresponding treatment plan, and discharged her back to the prison.  (Id.)  Upon her return to the prison, Decedent's symptoms continued to worsen, and on May 15, 2010, she was sent back to the hospital.  (Id.)  At this point she was diagnosed with Stevens-Johnson syndrome,

1

a severe systemic allergic reaction which is a possible side-effect to Lamictal.  (Id. at 1-2.)

Decedent was discharged on her own recognizance on May 29, 2010, and did not return to York

County Prison.  (Doc. No. 51 at 2.)  On September 2, 2011, Decedent committed suicide.  (Id.)

On May 11, 2012, Plaintiff Carla Navedo, acting as a special representative of

Decedent's estate, initiated the above-captioned action against Defendant Rumsey and other

Defendants including PrimeCare Medical, Inc.,[1] and various PrimeCare employees.  (Doc. No.

1.)  All Defendants other than Rumsey have been voluntarily dismissed by Plaintiff, or have

settled.  Plaintiff alleges that Defendant deviated from the standard of care by failing to properly

diagnose Decedent on May 13, 2010, and by returning her to the prison.  (Doc. No. 51 at 2-3.)

Defendant filed a motion in limine on January 28, 2014.  (Doc. No. 49.)  Trial is currently

scheduled for April 21, 2014.

## II.    DISCUSSION

In her motion in limine, Defendant asks the Court to exclude: (1) evidence regarding a

lost earning capacity claim; (2) expert testimony from the PrimeCare co-Defendants regarding

standard of care and causation; (3) evidence critical of medical care not pled in the complaint,

specifically, the care Decedent received at York Hospital during and after May 15, 2010, which

was not present in Plaintiff's pleadings; and (4) a videotaped statement provided by Decedent

before her death and/or transcript of same.

### A.    Lost earning capacity, expert testimony from PrimeCare co-Defendants, evidence critical of medical care which was not pled in the complaint

In her brief in opposition to the motion in limine, Plaintiff agrees that she will not pursue

---

[1]  PrimeCare is a Pennsylvania corporation with a contract to provide medical care and services to inmates at York County Prison.

a lost earning capacity claim and will not present expert opinions from the PrimeCare co-Defendants regarding standard of care or causation.  Plaintiff further agrees that she will not seek damages from York County and will restrict her theory of liability to the expert report, which opines solely to the care provided by Defendant on May 13, 2010, and which therefore does not go beyond the allegations set forth in the complaint.  Accordingly, the Court will deny Defendant's first three requests as moot.

**B.      Decedent's videotaped statement**

Plaintiff does, however, oppose preclusion of Decedent's videotaped statement, in which Decedent provides testimony about her hospitalization at the York Hospital and the effects of her Stevens-Johnson Syndrome.  In moving to preclude the video, Defendant contends that the videotape, made in preparation of litigation, not under oath, and without opportunity for cross-examination, is lacking in sufficient guarantees of trustworthiness, and is not more probative than other available evidence.  (Doc. No. 45 at 7-10.)  Plaintiff asserts that the videotaped statements are sufficiently trustworthy, probative, and consistent with the interests of justice. (Doc. No. 57-2 at 2-6.)

Admissibility of the video is governed by application of Federal Rule of Evidence 807, the residual hearsay exception.  Under this "catch-all" provision, hearsay that is otherwise not admissible by virtue of a specific hearsay exceptions is nevertheless admissible if:

> (1) the statement has equivalent circumstantial guarantees of trustworthiness;
> (2) it is offered as evidence of a material fact;
> (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and
> (4) admitting it will best serve the purposes of these rules and the interests of justice.

Fed. R. Evid. 807.  The residual hearsay exception is rarely invoked, and applied only in

exceptional circumstances.  See Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc., 247

F.3d 79, 112 (3d Cir.2001).  This exception is meant to "apply only when certain exceptional

guarantees of trustworthiness exist and when high degrees of probativeness and necessity are

present."  See United States v. Bailey, 581 F.2d 341, 347 (3d Cir.1978).  There is a heavy burden

on the proponent of the statement, and invocation of the rule requires "some degree of rigor."

See Trustees of the Univ. of Pa. v. Lexington Ins. Co., 815 F.2d 890, 906 (3d Cir. 1987);

Wezorek v. Allstate Ins. Co., No. 06-1031, 2007 WL 1816293, at *1 (E.D. Pa. June 22, 2007).

The decision to exclude evidence offered under the residual hearsay exception of Rule 807 is

entrusted to the court's discretion.  See United States v. Ferri, 778 F.2d 985, 991 (3d Cir. 1985).

With these principles in mind, the Court will address the factors for admission outlined in Rule

807.  Because neither party appears to deny that Decedent's description of her care and suffering

are evidence of material facts, the Court will only need to address the other three requirements of

Rule 807: trustworthiness, probativeness, and whether admission is in the interests of justice.

### 1.    Trustworthiness

Federal Rule of Evidence 807 requires that the statement sought to be admitted has

"equivalent circumstantial guarantees of trustworthiness" to the other hearsay exceptions.  In

order to analyze whether proffered evidence carries sufficient guarantees of trustworthiness,

courts balance the following factors: (1) whether the declarant was under oath when the

statement was made; (2) whether the declarant voluntarily made the statement; (3) whether the

statement was based on the declarant's personal knowledge; (4) whether the statement

contradicted a prior statement; (5) whether the statement was videotaped in order to provide the

jury with an opportunity to evaluate the declarant's demeanor; (6) the ability of an adverse party

to cross-examine the declarant; (7) the proximity in time between the statement and the events described; (8) whether the statement is corroborated; (9) the declarant's motivation to fabricate the contents of the statement; (10) whether the statement was prepared in anticipation of litigation; (11) the statement's spontaneity; and (12) whether the declarant's memory or perception was faulty.  See Greco v. Nat'l R.R. Passenger Corp., No. 02-6862, 2005 WL 1320147, at *5 (E.D. Pa. June 1, 2005) (citing Bohler-Uddeholm Am., Inc. v. Ellwood Group, 247 F.3d 79, 112-13 (3d Cir. 2001); Brown v. Philip Morris, Inc., 228 F.Supp.2d 506, 512 (D.N.J. 2002)).

Applying the foregoing factors, Decedent was not under oath and Defendant was not able to cross-examine her.  See Kyeame v. Buchheit, No. 07-01239, 2011 WL 6151428, at *2 (M.D. Pa. Dec. 12, 2011) (citing Lloyd v. Am. Export Lines, Inc., 580 F.2d 1179, 1192 (3d Cir.1978)) ("[Declarant's] statements were neither made under oath nor subject to cross-examination, the traditional methods used to ensure trustworthiness.").  Additionally, Plaintiff concedes that the testimony was not spontaneous but was made in anticipation of litigation, and Decedent thus had a considerable financial stake in her statements.  Moreover, to the extent Decedent commented as to the medical treatment she received at York Hospital, her statements were not contemporaneous but were made in November 2010, six months after the treatment took place. These factors all weigh strongly against trustworthiness.

In contrast, the statement was made voluntarily based on Decedent's personal knowledge, it does not appear to contradict anything in the record, and it was videotaped, thereby allowing a jury to evaluate her demeanor during her testimony.  Moreover, to the extent Decedent commented on her current suffering, it was more or less contemporaneous with the

testimony at issue.  Thus, there are considerable factors that weigh both for and against

admission of the videotape.  However, because the factors do not clearly favor admission and in

consideration of Plaintiff's heavy burden associated with Rule 807, the Court finds that

"exceptional guarantees of trustworthiness" are not present in this matter and the Court will

exclude the evidence on this basis.  See United States v. Mitchell, 145 F.3d 572, 579 (3d Cir.

1998) (quoting Idaho v. Wright, 497 U.S. 805, 820 (1990) ("The theory supporting admissibility

is that 'the declarant's truthfulness is so clear from the surrounding circumstances that the test of

cross-examination would be of marginal utility.'")

        The case most factually similar and thus on point for the Court's conclusion is Brown ex

rel. Estate of Brown v. Philip Morris Inc., 228 F. Supp. 2d 506 (D.N.J. 2002).  In Brown, the

Plaintiff filed a complaint against various tobacco companies for the death of her husband.

Pursuant to Rule 807, Plaintiff sought to introduce as evidence a videotaped statement that the

decedent, her husband, gave to his attorney regarding the tobacco products he used.  Id. at 511-

513.  The court in Brown noted that, as here, the factors supporting admission were that the

statement was voluntary and based on personal knowledge, it did not contradict any previous

statement by the decedent, and it was preserved in video form.  Id. at 512.  However, the court

found that the evidence was lacking "circumstantial guarantees of trustworthiness" because (1) it

was not under oath and penalty of perjury; (2) there was no opportunity to cross-examine the

decedent; (3) the statement was not spontaneous but was prepared in anticipation of litigation;

(4) the decedent had a financial interest in presenting facts in a light most favorable to his

claims; and (5) the statement was made years after the events described therein.  Id. at 512-13.

Brown is thus factually similar to this action, except that, unlike here, the statement in Brown

was recorded many years after the events took place.[2]  However, the Court finds that this

distinction does not mandate a different outcome because the balancing of the factors still does

not clearly weigh in favor of trustworthiness.  Therefore, the Court finds that there are no

"exceptional circumstances" here which call for invocation of the residual hearsay exception.

See id.; Sternhagen v. Dow Co., 108 F. Supp. 2d 1113, 1118-21 (D.Mont. 1999) (excluding

videotaped statement of decedent as lacking guarantees of trustworthiness and thus not falling

into residual hearsay exception).

### 2.        Probativeness

Although the Court will preclude the evidence because it finds that the statement lacks

sufficient guarantees of trustworthiness, the Court additionally finds that the evidence in the

videotape is not "more probative on the point for which it is offered than any other evidence that

the proponent can obtain through reasonable efforts."  See Fed.R.Evid. 807.  Although the Court

agrees that Decedent's description of her care at York Hospital and her subsequent medical

condition is quite probative, it appears there are other witnesses available who can testify as to

the care received at York as well as to Decedent's medical condition following her diagnosis

with Stevens-Johnson Syndrome.  Thus, although the evidence is highly probative, there are

other ways to introduce Decedent's condition to the jury.  See United States v. Bailey, 581 F.2d

341, 347 (3d Cir.1978) (stating that the residual hearsay exception applies "when high degrees of

---

[2]  Plaintiff also distinguishes Brown on the basis that the videotape therein did not have any bearing on damages, while Decedent's testimony in the present matter does.  (Doc. No. 57-2.)  However, while this point speaks to the relative probativeness of the respective statements, it does not speak to guarantees of trustworthiness.  Indeed, the Brown court, because it found that the videotape did not contain sufficient guarantees of trustworthiness, did not proceed to analyze the probative nature of the statement in precluding its admission.  See Brown, 228 F. Supp. 2d at 515 n.5.

probativeness and necessity are present") (emphasis added).

### 3. Interests of justice

Although the Court is sympathetic to Plaintiff's position that exclusion of the statement deprives Decedent of her day in court, because the Court finds that the videotaped statement is lacking in sufficient guarantees of trustworthiness and is not the only probative evidence Plaintiff has at her disposal, the Court finds that admission of the videotaped statement would not promote the interests of justice in accordance with Rule 807, the residual hearsay exception. See AAMCO Transmissions, Inc. v. Baker, 591 F. Supp. 2d 788, 800 (E.D. Pa. 2008) (finding that admission of evidence under Rule 807 that is lacking in sufficient guarantees of trustworthiness and which is not more probative than any other available evidence is not consistent with the interests of justice).

### C. Visual images from the videotape

Lastly, Plaintiff asserts that were the Court to exclude the statements on the videotape as hearsay, the Court should nevertheless admit the images on the videotape, which "reveal[] the residual scarring of [Decedent's] face and skin, as well as her difficulties with her eyes." (Doc. No. 57-2 at 6.) Plaintiff contends the images are relevant, can be authenticated by Plaintiff, and are not hearsay. (Id.) Defendant did not respond to this issue. As the images are relevant to Decedent's condition, and Defendant has not yet elucidated a basis for excluding the photographic evidence, the Court finds no basis to exclude the images at this time.

## III. CONCLUSION

An order consistent with this memorandum follows.